```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
 2                    Newport News Division

 3

 4    - - - - - - - - - - - - - - - - - -
                                         )
 5     UNITED STATES OF AMERICA,         )
                                         )
 6     v.                                )   CRIMINAL ACTION NO.
                                         )   4:24mj45
 7     JAMAL SHIELDS,                    )
                                         )
 8          Defendant.                   )
                                         )
 9    - - - - - - - - - - - - - - - - - -

10

11

12                 TRANSCRIPT OF PROCEEDINGS

13                   (Preliminary hearing)

14                  Newport News, Virginia

15                      July 25, 2024

16

17    BEFORE:
                 THE HONORABLE DOUGLAS E. MILLER
18               United States Magistrate Judge

19    APPEARANCES:

20
                 UNITED STATES ATTORNEY'S OFFICE
21               By:  Therese O'Brien
                      Assistant United States Attorney
22                    Counsel for the United States

23
                 FEDERAL PUBLIC DEFENDER'S OFFICE
24               By:  Sean Mitchell
                      Assistant Federal Public Defender
25                    Counsel for the Defendant
```

| | |
|---|---|
| 1 | (Hearing commenced at 2:49 p.m.) |
| 2 | THE CLERK:  United States versus Jamal Shields, |
| 3 | 4:24mj45. |
| 4 | Is the government ready, Ms. O'Brien? |
| 5 | MS. O'BRIEN:  The Government is ready. |
| 6 | THE CLERK:  Is the defendant ready, Mr. Mitchell? |
| 7 | MR. MITCHELL:  Defense is ready.  Thank you. |
| 8 | THE COURT:  All right.  And this is Mr. Shields? |
| 9 | THE DEFENDANT:  Yes, sir. |
| 10 | THE COURT:  Good afternoon, Mr. Shields. |
| 11 | THE DEFENDANT:  Good afternoon. |
| 12 | THE COURT:  All right.  It's my understanding |
| 13 | Mr. Shields was bonded earlier, and because no preliminary |
| 14 | has been held, we continued it till today.  So we are, I |
| 15 | assume, prepared to go forward with the preliminary hearing. |
| 16 | Are we still going forward today, Mr. Mitchell? |
| 17 | MR. MITCHELL:  We are, Your Honor. |
| 18 | THE COURT:  All right.  You all can have a seat. |
| 19 | Ms. O'Brien, do you have a witness? |
| 20 | MS. O'BRIEN:  I do, Your Honor.  The United States |
| 21 | calls Postal Inspector Keith Moore of the United States |
| 22 | Postal Inspection Service as our witness. |
| 23 | THE COURT:  Inspector Moore, would you please come |
| 24 | forward and be sworn. |
| 25 | (Witness was sworn.) |

Moore, K. - Direct                                                    3

```
 1              KEITH MOORE, called by the Government, having been
 2    first duly sworn, was examined and testified as follows:
 3                          DIRECT EXAMINATION
 4    BY MS. O'BRIEN:
 5    Q.  Good afternoon, sir.
 6    A.  Good afternoon.
 7    Q.  Can you please tell us your name and spell your last name
 8    for the record?
 9    A.  Yes.  A U.S. Postal Inspector Keith Moore.  That's
10    M-o-o-r-e.
11    Q.  And, Inspector Moore, how are you employed?
12    A.  I am a United States Postal Inspector.
13    Q.  And are you one of the postal inspectors for the
14    government's investigation of Jamal Shields and other
15    individuals?
16    A.  That is correct.
17    Q.  And did you prepare an affidavit in support of the
18    criminal complaint charging Mr. Shields with theft or receipt
19    of stolen mail?
20    A.  Yes.
21    Q.  And did you review that affidavit in preparation for
22    today's hearing?
23    A.  I did.
24    Q.  Is the information contained in that affidavit in support
25    of the criminal complaint true and correct, to the best of
```

 1    your knowledge?

 2    A.  It is.

 3    Q.  And for purposes of today's hearing, do you adopt the

 4    affidavit as your testimony as to probable cause?

 5    A.  Yes.

 6            MS. O'BRIEN:  At this time, if there is no

 7    objection, I'd like to move Inspector Moore's affidavit into

 8    evidence as Government's Exhibit 1.

 9            MR. MITCHELL:  No objection, Your Honor.

10            THE COURT:  Okay.  All right.  It will be admitted.

11    I do already have a copy.

12            (Government's Exhibit 1 received in evidence.)

13            MS. O'BRIEN:  I have no further questions, Your

14    Honor.

15            THE COURT:  All right.  Mr. Mitchell.

16            MR. MITCHELL:  Thank you, Your Honor.

17                         CROSS-EXAMINATION

18    BY MR. MITCHELL:

19    Q.  Good afternoon, sir.

20    A.  Good afternoon.

21    Q.  Sir, I'm going to refer you to your affidavit that's been

22    introduced and accepted into evidence.  The affidavit says

23    that you read Mr. Shields his *Miranda* rights; is that

24    correct?

25    A.  That is correct.

Moore, K. - Cross                                                    5

1  Q.  Did you ask him any questions about the alleged offense

2  prior to reading those rights?

3  A.  No.

4  Q.  To your knowledge, did any other law enforcement officers

5  question Mr. Shields before you read him those *Miranda*

6  rights?

7  A.  Not to my knowledge.

8  Q.  And was your interview with Mr. Shields recorded?

9  A.  Yes, audio, no video.

10 Q.  And the entire interview?

11 A.  No.

12 Q.  Would you please explain.

13 A.  Mr. Shields requested that the audio be turned off

14 because he had some statements to make that he did not want

15 to be recorded.

16 Q.  And which portion of his statement was unrecorded?

17 That's not exactly clear from the affidavit.

18 A.  The very end regarding other individuals that might be

19 involved.

20 Q.  And is that information listed here in the affidavit?

21 A.  There's a statement toward the end regarding the cell

22 phone that was referenced after getting consent to open

23 regarding an article that was written back from December of

24 2023.

25 Q.  So that portion is not recorded?

Moore, K. - Cross                                                    6

```
 1   A.  That portion is not recorded.
 2   Q.  And you used the term "consent."  He consented to that?
 3   A.  Yes, he did.
 4   Q.  And was that consent reduced to writing?
 5   A.  No.
 6   Q.  So it was oral consent?
 7   A.  Correct.
 8   Q.  What words did he use exactly, do you recall?
 9   A.  I don't recall specifically what he said.  I recall what
10   I asked.
11   Q.  What did you ask?
12   A.  Which was to verify your statements, do you consent to
13   let us look at the text messages in your cell phone, and the
14   answer was "yes."
15   Q.  And those were your exact words?
16   A.  Yes.
17   Q.  And did Mr. Shields hand you your phone or did you take
18   it from him -- excuse me, hand you his phone or did you take
19   it from him?
20   A.  So he did not have it on his person.  The phone was
21   retrieved from the vehicle after Mr. Shields was apprehended.
22   The state trooper gave me the phone, which I put in front of
23   Mr. Shields.
24   Q.  What's the state trooper's name?
25   A.  I don't know.
```

1   Q.  Were there more than one state trooper on scene?

2   A.  Correct.  Yes.

3   Q.  But this particular state trooper you don't recall the

4   name?

5   A.  No.

6   Q.  But this state -- this unnamed state trooper retrieved

7   the phone and gave it to you?

8   A.  He might have given it to another state trooper, and then

9   there was a collection of phones that were given to me, yes.

10  Q.  But you were the one that asked for consent --

11  A.  Yes.

12  Q.  -- to look at the phone?

13  A.  Correct.

14  Q.  Sir, how many different law enforcement agencies were

15  involved in the pursuit that you described in the affidavit?

16  A.  From the very beginning, there would have been three,

17  which was the United States Postal Inspection Service,

18  Newport News Police Department, and the Virginia State

19  Police.

20  Q.  The vehicles that were involved in the pursuit of

21  Mr. Shields, were those marked vehicles and were they marked

22  with insignias that said "police," or anything similar?

23  A.  There were some vehicles that were unmarked that just had

24  blue lights in them, and then there were some vehicles that

25  were Virginia State Police marked units.

Moore, K. - Cross                                                      8

```
 1   Q.  How many marked Virginia State Police units would you
 2   say?
 3   A.  At least two.  I wasn't there, so I'm not sure if there
 4   was more than two but at least two.
 5   Q.  Oh, you weren't there?
 6   A.  For his pursuit, no.
 7   Q.  So you arrived after the pursuit?
 8   A.  No, I didn't arrive at the scene when he was arrested.  I
 9   was at the Newport News north precinct.
10   Q.  So you weren't at the scene at all?
11   A.  At the beginning when they fled, yes, I was there, but
12   not when he was apprehended, no.
13   Q.  So some marked vehicles you added on with the blue
14   lights?
15   A.  Yes.
16   Q.  Were those blue lights flashing, if you know?
17   A.  I was told they were, yes.
18   Q.  Who told you that?
19   A.  At least one, I guess you could say special agent with
20   the Virginia State Police.
21   Q.  And what's that person's name?
22   A.  John, and last name I can't remember.
23   Q.  Okay.  So Virginia State Police John, whose last name you
24   can't remember, told you that one of the vehicles had its
25   lights flashing?
```

1   A.  He was the closest to Mr. Shields, and he did have his

2   lights on, yes.

3   Q.  Okay.  That information is not in the affidavit, though?

4   A.  I don't think so, no.

5   Q.  Okay.  Do you know if the pursuit that we are discussing

6   was recorded?

7   A.  I do not think that the unmarked cars had video cameras

8   in them.  I don't know for sure if the marked units have

9   video cameras.

10  Q.  How were you dressed?

11  A.  T-shirt and blue jeans.

12  Q.  How were the other law enforcement officers dressed?

13  A.  The state police that were involved in our operation had

14  tactical vests that stated "police" in the front.

15  Q.  And what about the Newport News officers?

16  A.  Also has "police" on the front of their tactical

17  bullet-resistant or bulletproof vests.

18  Q.  Each one of them?

19  A.  Yes.

20          MR. MITCHELL:  Okay.  No further questions.  Thank

21  you.

22          THE COURT:  Ms. O'Brien, did you have anything

23  further for Inspector Moore?

24          MS. O'BRIEN:  I do not, Your Honor.

25          THE COURT:  Just so I'm clear, I think the record

```
 1   is clear, you weren't present when Mr. Shields was
 2   apprehended, but the interview you discussed, part of which
 3   was recorded and part of it not recorded, was that you
 4   interviewing Mr. Shields?
 5           THE WITNESS:  That is correct.
 6           THE COURT:  Okay.  All right.  As a result of my
 7   questions, anyone have any other questions?
 8           MS. O'BRIEN:  No, Your Honor.
 9           MR. MITCHELL:  No, Your Honor.
10           THE COURT:  All right.  Thank you for your
11   testimony, Inspector Moore.  You may have a seat.
12           (Witness excused.)
13           THE COURT:  Any other evidence, Ms. O'Brien?
14           MS. O'BRIEN:  No, Your Honor.
15           THE COURT:  All right.  Did you want to offer any
16   evidence, Mr. Mitchell?
17           MR. MITCHELL:  No, Your Honor.  Thank you.
18           THE COURT:  Do you need to argue the case at all?
19           MR. MITCHELL:  No, Your Honor.  We will submit it
20   at this time.
21           THE COURT:  Okay.  Well, I do think, based on
22   Inspector Moore's testimony and the affidavit as he's
23   described it, there is probable cause to support the offense
24   alleged, so we will hold it over for action by the Grand
25   Jury.
```

1          Is there anything else we need to accomplish today?
2     Are we going to enter a discovery order or are we waiting
3     for something else to happen?
4          MS. O'BRIEN:  Nothing else, Your Honor.
5          THE COURT:  Okay.  Anything else for you,
6     Mr. Mitchell?
7          MR. MITCHELL:  No, Your Honor.  Thank you.
8          THE COURT:  All right.  Mr. Shields, that concludes
9     today's proceedings.  I'll just take this opportunity to
10    remind you that you are on bond for these charges.  You do
11    have to continue to comply with the conditions of your bond.
12    If you fail to do so, you could have your bond revoked, and
13    you'd have to await trial in custody.  Do you understand
14    this?
15         THE DEFENDANT:  I understand, Your Honor.
16         THE COURT:  All right.  Thanks for being here
17    today.  That's all.
18          (Hearing adjourned at 3:00 p.m.)
19
20
21
22
23
24
25

1                           CERTIFICATION

2

3          I certify that the foregoing is a correct

4    transcript, to the best of my ability, of the court's audio

5    recording of proceedings in the above-entitled matter.

6

7          X_____/s/_____x

8                        Jody A. Stewart

9               X_____7-26-2024 _____x

10                         Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25