IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 4:24-cr-49 |
| | ) | |
| JAMAL A. SHIELDS | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' TRIAL MEMORANDUM**

The United States of America, by and through undersigned counsel, respectfully submits this trial memorandum to inform the Court of the general nature of the case and address certain legal and evidentiary issues that may arise during the trial of this matter, which is scheduled to begin on February 4, 2025, in Newport News, Virginia. The Government anticipates that its case will take approximately three trial days to present.

**CHARGES IN THE SUPERSEDING INDICTMENT**

JAMAL A. SHIELDS (hereinafter the "defendant") is named in a three-count Superseding Indictment returned by a federal grand jury sitting in the Eastern District of Virginia on December 9, 2024. The Superseding Indictment charges the defendant with one count of Conspiracy to Commit Offenses Against the United States, in violation of 18 U.S.C. § 371, one count of Theft of Mail, in violation of 18 U.S.C. § 1708, and one count of Illegal Receipt of a Firearm by a Person Under Indictment, in violation of 18 U.S.C. § 922(n).

**ELEMENTS OF THE CHARGED CRIME**

To convict defendant of conspiracy in violation of 18 U.S.C. § 371, the United States must prove beyond a reasonable doubt that:

(1) two or more persons agreed to do something which federal law prohibits, here that is, theft of mail in violation of 18 U.S.C. § 1708;

(2) the defendant knew of the conspiracy and willfully joined the conspiracy; and

(3) that at some time during the existence of the conspiracy or agreement, one of the members of the conspiracy knowingly performed, in the Eastern District of Virginia, one of the overt acts charged in the indictment in order to accomplish the object or purpose of the agreement.

*United States v. Tedder*, 801 F.2d 1437, 1446 (4th Cir. 1986) (elements of § 371 conspiracy);

*United States v. Norris*, 749 F.2d 1116, 1121 (4th Cir. 1984) (same).

To convict defendant of theft of mail in violation of 18 U.S.C. § 1708, the United States must prove beyond a reasonable doubt that:

(1) the defendant stole, took, abstracted, or obtained by fraud or deception;

(2) any letter, postal card, package, bag, or mail, or any article contained in any letter, package, bag, or mail; and

(3) that the letter, postal card, package, bag, or mail had been left for collection upon or adjacent to a collection box or other authorized depository of mail matter.

*United States v. Gilmore*, No. 88-5088, 1989 WL 37425 (4th Cir. Apr. 4, 1989); *United States v. Hawkins*, 614 F.2d 85, 87 (5th Cir. 1980).

To convict defendant of illegal receipt of a firearm by a person under indictment in violation of 18 U.S.C. § 922(n), the United States must prove beyond a reasonable doubt that:

(1) the defendant was under indictment for a crime punishable by imprisonment for a term exceeding one year;

(2) the defendant received a firearm or ammunition that had been shipped or transported in interstate commerce; and

(3) the defendant did so willfully.

*United States v. Cope*, 312 F.3d 757, 769 (6th Cir. 2002) (elements of § 922(n); *United States v. Forbes*, 64 F.3d 928, 932 (4th Cir. 1995) (defines the "willfully" element of § 922(n)).

**FACTUAL BACKGROUND**

The Government will begin the presentation of its case with the theft of mail at a collection box in Newport News. In the weeks leading up to July 22, 2024, the blue postal collection box at Turnberry Boulevard had been broken into on multiple occasions. As a result, law enforcement from the United States Postal Inspection Service ("USPIS") coordinated an undercover surveillance operation on the blue collection box.

On July 22, 2024, the USPIS in coordination with the Newport News Police Department ("NNPD") and Virginia State Police ("VSP"), conducted surveillance at the collection box located at the Patrick Henry Post Office in Newport News, Virginia. At approximately 2:34 a.m., law enforcement observed a gray Hyundai Santa Fe pull up next to the curb of Turnberry Boulevard, just south of the post office. The defendant was driving the car. He turned off the lights of the vehicle as the defendant and his co-conspirators pulled up to the curb to avoid drawing scrutiny from the public and law enforcement. The defendant's two co-conspirators exited the vehicle and walked over to the postal collection box. The defendant's co-conspirators used an "arrow key" to open the collection box and remove mail. An "arrow key" is a master key used to access a variety of mail repositories, including blue collection boxes, outdoor parcel lockers, and apartment mailbox panels in a given area.

After witnessing the defendant's co-conspirators take the foregoing actions, USPIS agents gave the command for law enforcement to move in and conduct a takedown. When the defendant and his co-conspirators started to flee, law enforcement were called in to assist. Agents and

officers who were wearing police vests identified themselves by shouting police and telling the suspects to get down. They had their weapons drawn and the lights from their cars were flashing. The defendant's co-conspirators fled on foot. The defendant was the driver of the getaway car and fled from law enforcement in his vehicle. While fleeing, the defendant threw checks and money orders out the window of the vehicle.

After a high-speed chase, the defendant eventually stopped and was taken into custody. When VSP approached the vehicle, the defendant told them that he had a firearm in the vehicle. In the ensuing investigation into the defendant, it was discovered that he had received the firearm from M.M. in the weeks prior while under felony indictment for rape and forcible sodomy in Hampton, VA.

One of the defendant's co-conspirators was apprehended by law enforcement approximately 50 yards from the collection box and had in his possession a black backpack with approximately 35 pieces of stolen mail in it. While fleeing, the other co-conspirator discarded his jacket and carjacked a vehicle. While this particular co-conspirator was not apprehended, his discarded jacket was recovered and found to contain an "arrow key."

The defendant and his co-conspirators stole at least 82 pieces of outgoing mail – at least ten of which victims mailed to pay bills, which included checks. None of the checks were made payable to the defendant and his co-conspirators.

**ANTICIPATED WITNESSES AND EVIDENCE**

To prove such facts, the United States intends to call:

1. Law enforcement officers from the United States Postal Inspection Service and Newport News Police Department to testify about the undercover surveillance operation at the collection box on Turnberry Boulevard and the events of July 22, 2024.
2. Law enforcement officers from Virginia State Police to testify about the high-speed chase of the defendant, the circumstances of the defendant's arrest, and the recovery of an illegal firearm.
3. An expert witness from the Bureau of Alcohol, Tobacco and Firearms to testify about the firearm recovered from the defendant, the interstate nexus for the firearm, and the defendant's history of firearm purchases where he was made aware of the prohibition against receiving a firearm while under indictment.
4. The purchaser and owner of the firearm recovered from the defendant to testify about the circumstances of how he received the firearm under felony indictment.
5. A witness to present evidence that the defendant was under felony indictment in Hampton for rape and forcible sodomy.
6. A law enforcement officer to present evidence regarding the defendant's statements against interest in 2022 explaining his motive for possessing firearms for protection.
7. Expert witnesses to testify about the extraction of the phone of the defendant's co-conspirator as well as contemporaneous communication between the defendant and his co-conspirator.
8. Witnesses to establish the chain of custody of all evidence presented to the jury.

Through the foregoing witnesses, the government's evidence will consist of: (1) maps and photographs of the key locations at issue; (2) physical evidence and photographs of physical

evidence recovered from the defendant and his co-conspirators; (3) law enforcement reports from ATF about the firearm recovered from the defendant; (4) dash-camera footage from the VSP of the circumstances of the defendant's arrest after a high-speed chase; (5) state court records of the defendant's indictment for rape and forcible sodomy as well as related proceedings; (6) paperwork from the defendant's prior purchases of firearms, making him aware that an indictee cannot legally receive a firearm; (7) property and evidence reports; and (8) phone records as well as a summary chart distilling those records.

On December 20, 2024, the United States first offered to reach stipulations about, among other things, the defendant's felony indictment, the interstate nexus for the firearm, the functionality of the firearm, the authenticity of the evidence, the chain of custody of the evidence, and the extraction of a phone. To date, the defendant has not agreed to any stipulations. Without stipulations, the government's case will take longer to present.

**RELEVANT CASE LAW AND POTENTIAL LEGAL ISSUES**

**A. Aiding and Abetting Theft of Mail Under 18 U.S.C. § 1708**

In general, a person may violate the law even though he or she did not do each and every act if that person aided and abetted the commission of the offense. It is blackletter law that "whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal." 18 U.S.C. § 2. To be guilty of aiding and abetting an offense, the defendant must know that some crime was committed or being committed, act for the purpose of aiding that crime, and do so with intention of causing the crime to be committed. *United States v. Odom*, 65 F.4th 714, 721 (4th Cir. 2023). A defendant aids and abets if he has "knowingly associated himself with and participated in the criminal venture."

*United States v. Winstead*, 708 F.2d 925, 927 (4th Cir. 1983). However, mere presence is not sufficient for the jury to conclude that a defendant aided and abetted in the commission of an offense. *United States v. Spoone*, 741 F.2d 680, 686 (4th Cir. 1984).

The defendant aided and abetted in the theft of mail on July 22, 2024. The government will not present evidence that the defendant directly stole any mail himself. His role in the crimes was, among other things, to drive the getaway vehicle and possess a firearm to protect the criminal endeavor. This is more than a sufficient factual predication for the jury to find him guilty of aiding and abetting the theft of mail on July 22, 2024. *United States v. Howard*, 785 Fed. Appx. 93, 95 (4th Cir. 2019) (affirming aiding and abetting liability for the getaway driver for a bank robbery); *United States v. Fuller*, 192 Fed. Appx. 210, 212 (4th Cir. 2006) (upholding aiding and abetting liability for getaway driver); *United States v. Moore*, 843 Fed. Appx. 498, 502 (4th Cir. 2021) (same).

By law, the defendant is equally responsible as an aider and abettor for the mail theft.

**B. Pinkerton Liability**

In addition to the above-described theories of liability for aiding and abetting, the government will seek a *Pinkerton* instruction regarding the defendant's criminal liability for the conspiracy and its objects, consisting of the theft of mail. *See Pinkerton v. United States*, 328 U.S. 640, 646–47 (1946) (holding fellow conspirators liable for substantive offenses committed by a co-conspirator in furtherance of the conspiracy). A defendant is liable for substantive offenses of his coconspirators where they were in furtherance of the conspiracy and reasonably foreseeable to the defendant. *United States v. Ashley*, 606 F.3d 135, 142-43 (4th Cir. 2010). The Fourth Circuit has held that *Pinkerton* is a separate basis for liability in addition to a theory for aiding and abetting.

*United States v. Wilson*, 135 F.3d 291, 305 (4th Cir), *cert denied*, 523 U.S. 1143 (1998).

Conspiracy liability represents another way the defendant is legally responsible for the theft of mail on July 22, 2024. The defendant drove his coconspirators to a blue postal collection box in the middle of the night. He turned off the lights to his vehicle as they approached the box to avoid detection. He illegally possessed a firearm for protection in the event that anyone interfered with the criminal endeavor. When undercover police announced themselves, the defendant went on a high-speed chase. During said chase, he attempted to obstruct the government's investigation by throwing stolen mail out of his vehicle. And if all that were not enough, he lied to investigators when interviewed at the time of his arrest. The defendant's conduct amply demonstrates that he joined the conspiracy, acted in furtherance of its ends, and the theft of mail was reasonably foreseeable to him.

**C. Admissibility of Co-conspirator Statements**

Hearsay is any statement that the declarant does not make at the instant trial or hearing that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(C). Statement means a person's oral assertion, written assertion, or non- verbal conduct, if intended as an assertion. Fed. R. Evid. 801(a). A statement made by a party or co-conspirator and offered against that party is not hearsay. Fed. R. Evid. 801(d)(2)(A) and (E). To admit a co-conspirator statement, the Government must show (1) a conspiracy did in fact exist; (2) the declarant and the defendant were members of the conspiracy; and (3) the statement was made in the course of and in furtherance of the conspiracy. *United States v. Graham*, 711 F.3d 445, 452 (4th Cir. 2013); *United States v. Pratt*, 239 F.3d 640, 643 (4th Cir. 2001).

The Government will present statements that are admissible as both opposing party statements and co-conspirator statements under *Bourjaily v. United States*, 483 U.S. 171, 183 (1987) (holding that for a statement to qualify under Rule 801(d)(2)(E), "there must be evidence that there was a conspiracy involving the declarant and the non-offering party, and that the statement was made during the course of and in furtherance of the conspiracy). Further, under Fed. R. Evid. 801(d)(2)(E) the court may consider both the co-conspirator's out-of-court statement and evidence independent of it, but the statement alone does not establish the existence of the conspiracy or participation in it. Finally, as a matter of timing and process, the trial court in its discretion may admit co-conspirator statements into evidence prior to proof of the conspiracy, contingent upon a later showing of conspiracy by independent evidence. *United States v. Meredith*, 824 F.2d 1418, 1428 (4th Cir. 1987).

Statements made between co-conspirators to inform each other as to the progress or status of the conspiracy are statements in furtherance of the conspiracy including statements "to induce a conspirator's assistance to destroy evidence for purpose of evading detection or arrest." *United States v. Mathis*, 932 F.3d 242, 254 (4th Cir. 2019) (citing with approval *United States v. Mandell*, 752 F.3d 544, 552 (2d Cir. 2014)). Finally, "idle conversation that touches on, but does not further, the purposes of the conspiracy does not constitute a statement in furtherance of a conspiracy." *Pratt*, 239 F.3d at 643.

The Government will present conversations between the defendant and his co-conspirator Sampson Jumbo primarily through the expert testimony of Paul Swartz summarizing voluminous phone records in the form of a summary chart. The Government anticipates Mr. Swartz testifying primarily about text messages between the defendant and Mr. Jumbo as discussed below.

**D. Pre-Miranda Statements**

The United States plans to present testimony from the Virginia State Troopers who arrested the defendant that the defendant volunteered that he was in possession of a firearm as soon as police approached the vehicle after the chase. The defendant's statements were made prior to any *Miranda* warning but are admissible for two reasons.

First, voluntary statements made to the police prior to any questioning are admissible. *Miranda v. Arizona*, 384 U.S. 436, 478 (1966) ("Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence."); *United States v. Haynes*, 26 Fed. Appx. 123 (4th Cir. 2001) (voluntary pre-*Miranda* statements made by the defendant without questioning from police are admissible); *United States v. Williams*, 16 F. App'x 90, 92 (4th Cir. 2001) (per curiam) ("Spontaneous or volunteered statements that are not the product of interrogation or its functional equivalent are not barred by *Miranda*, even if the defendant is in custody when the statements are made.").

Second, even if the Court were to find that the police asked preliminary questions or otherwise caused the defendant to make utterances about the firearm, the information is admissible under the public-safety exception. *New York v. Quarles*, 467 U.S. 649, 655-56 (1984) (creating a public-safety exception for pre-*Miranda* statements about matters such as the location of a firearm at the scene of arrest). The Fourth Circuit has repeatedly upheld the admissibility of pre-*Miranda* statements to police about firearms as related to public safety. *United States v. Lloyd*, 581 Fed. Appx. 203 (4th Cir. 2014) (pre-*Miranda* statement admissible about the location of a firearm in a vehicle at the time of arrest); *United States v. Sandersen*, 23 Fed. Appx. 150 (4th Cir. 2001) (defendant's pre-*Miranda* statement regarding location of a shotgun). This preliminary

information about a firearm weighs particularly in favor of a firearm where the defendant volunteers the information prior to police questioning.

The defendant immediately volunteered to the arresting troopers that he had a firearm. These statements are admissible against him and directly relevant to show he received a firearm while under felony indictment in Hampton for rape and forcible sodomy.

**E. Willfulness and Knowledge as Required in 18 U.S.C. § 922(n)**

Section 922(n) makes it a federal crime to receive a firearm while under felony indictment:

> It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(n).

To "willfully" violate this statute, the defendant must act with "knowledge that his conduct was unlawful." *Dixon v. United States*, 548 U.S. 1, 5 (2006). The United States does not have to prove, however, that the defendant knew the specific federal law he was violating, only that he knew the receipt of the firearm was unlawful. *Bryan v. United States*, 524 U.S. 184, 191-96 (1998). In *Bryan*, the Supreme Court upheld a willfulness instruction on an analogous firearm violation where the jury was instructed that said, "the person need not be aware of the specific law or rule that his conduct may be violating. But he must act with intent to do something the law forbids." *Id*. at 190. Additionally, the United States must prove that the defendant had knowledge that he was under felony indictment to establish a violation of 18 U.S.C. § 922(n). *United States v. Forbes*, 64 F.3d 928, 932 (4th Cir. 1995).

The United States will establish the requisite willfulness and knowledge. With respect to knowledge, the government will present the defendant's felony indictment for rape and forcible

sodomy in Hampton Circuit Court (in the absence of a stipulation from the defendant). The government also plans to prove that the defendant was arraigned on the felony charges and was made fully aware of the indictment pending against him.

With respect to willfulness, the United States will present evidence regarding the defendant's history of buying at least eight firearms recovered by law enforcement where he completed ATF paperwork warning him that receiving a firearm while under indictment is a federal crime. The United States intends to introduce two representative ATF Forms 4473 wherein (i) the defendant was asked whether he was under indictment; and (ii) the instructions made clear:

> 18 U.S.C. § 922(n) prohibits the shipment, transportation, or receipt in or affecting interstate commerce of a firearm by one who is under indictment or information for a felony in any Federal, including a general court-martial, State or local court, or any other crime, punishable by imprisonment for a term exceeding one year. An information is a formal accusation of a crime verified by a prosecutor.

Additionally, the government plans to also elicit evidence that the defendant fled from police when officers attempted to stop his vehicle. The defendant was in possession of the illegal firearm at the time he fled. Indeed, some of his first words to the arresting officers after the high-speed chase were to tell police that he had a firearm. This demonstrates clear consciousness of guilt. Finally, the government also plans to introduce the defendant's own statements against interest to law enforcement in connection with another firearms case pending against the defendant in California. When he was interviewed and arrested in 2022 in connection with that case, he explained that he carried firearms because he was a "bounty hunter" and needed them for protection. These statements are consistent with the government's theory that the defendant used the firearm on the night of the mail thefts in furtherance of the conspiracy. The defendant's own words go directly to his motive to carry the firearm – the conspiracy required protection. It was no coincidence or

accident that the defendant was in possession of a firearm. He received and possessed the firearm to advance the joint criminal enterprise despite knowing that it was unlawful.

**F. Admissibility of Summary Evidence**

The United States will seek to admit a summary of the text messages in this case. The summary witness will testify as an expert witness to summarize data collected from the defendant's co-conspirator's cellphone in relation to Counts 1 and 2 of the Second Superseding Indictment. This evidence will be based upon phone records detailing text messages from in or about February 2023 to on or about July 21, 2024. In those messages, the defendant and his codefendant discuss financial fraud using coded language as well as their awareness that the Unites States Postal Inspection Service was conducting surveillance operations on the Peninsula. These contemporaneous messages are critical to show the defendant was made aware of the conspiracy to steal mail, the use of said mail in related fraud, and the risk that law enforcement might attempt to arrest the defendant and his co-conspirators during the commission of these offenses.

Fed R. Evid. 1006 provides as follows:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary or calculation. The originals or duplicates shall be available for examination or copying, or both, by the other parties at a reasonable time and place. The court may order they be produced in court.

This rule permits the admission of charts into evidence as a surrogate for underlying records "to reduce the volume of written documents that are introduced into evidence." *United States v. Janadi*, 374 F.3d 263, 272 (4th Cir. 2004). Under this rule, "[b]ecause the underlying documents need not be introduced into evidence, the chart itself is admitted as evidence in order to give the jury evidence of the underlying documents." *Id.* at 273. No limiting instruction is

required for charts under Rule 1006 because the Rule 1006 charts are independent evidence. *United States v. Janati*, 374 F.3d at 273; *United States v. Simmons*, 11 F.4th 239, 262 n.13 (4th Cir. 2021).

In addition, in complex cases under Fed. R. Evid. 611, summary charts are allowed to assist the jury in understanding the evidence. *United States v. Simmons*, 11 F.4th at 262 (4th Cir. 2021); *United States v. Johnson*, 54 F.3d 1150, 1158 (4th Cir. 1995) (Rule 611 permits the admission of summary charts "to facilitate the presentation and comprehension of evidence already in the record). The foundation for Rule 611 charts are that (1) the charts are based on competent evidence already before the jury; (2) the evidence underlying the charts is provided to the other side to test the charts for accuracy, (3) the person who prepared the charts is available for cross-examination, and (4) the jury is instructed concerning their consideration of the summaries so that they do not rely upon the charts as "independent evidence" and instead focus on "the evidence upon which the chart is based." *Johnson*, 54 F.3d at 1159 (4th Cir. 1995).

In this case, the summary charts will be admitted under Rules 1006 and 611. The summary evidence will be based upon the download of a cellular telephone and will also take into account other evidence in the record including phone calls and search history.

**G. Flight Jury Instruction**

The Government intends to offer a jury instruction on flight as providing circumstantial evidence of consciousness of guilt. Such an instruction requires a foundation linking the flight to consciousness of guilt for the crime to which the defendant is charged. The four necessary links in a chain of inferences are: (1) between a defendant's behavior and his flight, (2) between his flight and consciousness of guilt, (3) between his consciousness of guilt concerning the crime charged, and (4) between his consciousness of guilt concerning the crime charged and his actual guilt of the

crime charged. *United States v. Obi*, 239 F.3d 662, 665-66 (4th Cir. 2001) (citing United States v. Myers, 550 F.2d 1036, 1049 (5th Cir. 1977). While all four inferences in the causative chain must be present to allow the flight instruction, *Obi*, 239 F.3d at 666, here they unquestionably are. It is undisputed that the defendant drove the vehicle that fled when police tried to stop it. Thus while the value of the flight evidence may be diminished where the defendant flees and, for instance, is unaware of the investigation, *see, e.g.*, *United States v. Beahm* 664 F.2d 414, 420 (4th Cir.1981), such is not the case here where the defendant fled from police attempting to arrest him and his coconspirators committing the offense at issue. The firearm, conspiracy, and mail theft were top of mind for the defendant as he sped away from Virginia State Police on Interstate 64 and throughout Newport News.

## CONCLUSION

The United States submits that trial in this matter will take approximately three trial days. The United States respectfully submits the foregoing in an effort to advise the Court and counsel as to the factual nature of the evidence and issues that may arise during trial.

Respectfully Submitted,

Erik S. Siebert
United States Attorney

By: /s/

Therese N. O'Brien
D. Mack Coleman
Assistant United States Attorneys
United States Attorneys' Office
11815 Fountain Way, Suite 200
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
Email: therese.o'brien@usdoj.gov
mack.coleman@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

/s/

Therese N. O'Brien
D. Mack Coleman
Assistant United States Attorneys
United States Attorneys' Office
11815 Fountain Way, Suite 200
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
Email: therese.o'brien@usdoj.gov
mack.coleman@usdoj.gov